FILED
2020 Nov-02  AM 09:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| **JEREMY MINOR,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.:** |
| | ) | **3:19-CV-01631-CLS** |
| **CENTRAL FOREST PRODUCTS, INC.,** | ) | |
| **and TRAVIS BROWN,** | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

I.      STATEMENT OF UNDISPUTED MATERIAL FACTS.

A.      On October 4, 2019, Jeremy Minor ("Minor") sued Central Forest Products, Inc. ("CFP") and Travis Brown ("Brown" and the "defendants"), alleging they failed to pay Minor overtime under (and willfully violated) Section 207 of the Fair Labor Standards Act ("FLSA"). Complaint, pars. 26-30.

B.      The principal place of business of CFP, an Alabama corporation owned by Brown, is in Lauderdale County, Alabama. Exh. "A," Aff. Brown, par. 2.

C.      Minor's last period of work for CFP started around March 29, 2016, and continued until May 14, 2019, when Minor voluntarily terminated his employment. Exh. "A," Aff. Brown, par. 20; Exh. "B," Depo. Minor, p. 11, l. 13 - p. 12, l. 9.

D.      At all times relevant,[1] CFP's principal business involved harvesting trees ("wood") owned by a third party ("Threshold") from sites in Tennessee; loading that wood onto "wood trailers" owned by CFP; and transporting that wood to facilities designated by Threshold by pulling those loaded wood trailers on public highways using trucks owned by CFP. Exh. "A," Aff. Brown, par. 3.

E.      "Wood trailers" are trailers used to transport wood on logging roads from logging decks to staging areas, and then on public highways from the staging areas to the mills at which the wood is processed. Exh. "A," Aff. Brown, par. 4.

F.      The wood is loaded onto a wood trailer by a worker operating a piece of heavy equipment known as a "knuckleboom." Exh. "A," Aff. Brown, par. 5.

G.      "Pullout trucks" are large (Mack) trucks used to pull wood trailers on logging roads to staging locations at or near public highways, and occasionally, on or across public highways for short distances. Exh. "A," Aff. Brown, par. 8; Exh. "B,"

---

[1]If defendants willfully violated Section 207, Minor can recover unpaid overtime for the three years preceding the filing of his lawsuit (10/04/16 to 10/04/19); but, if the defendants did not willfully violate Section 207, Minor is only entitled to recover unpaid overtime for a period of two years prior to the filing of his lawsuit (10/04/17 to 10/04/19). 29 U.S.C. §255(a); *Bolar v. S. Intermodal Xpress,* 2019 U.S. Dist. LEXIS 166783, *41-42 (S.D. Ala.).

Exh. "B," Depo. Minor, p. 101, l. 16 - p. 102, l. 13.

H.     "Road trucks" are large (Mack, Peterbilt, and Western Star) trucks used to pull wood trailers on public highways. Exh. "A," Aff. Brown, par. 10.

I.     Threshold designates the specific mills to which CFP is to transport the wood. Exh. "A," Aff. Brown, par. 11.

J.     Some of the wood in transported to mills in Tennessee without ever leaving Tennessee; some of the wood is transported to mills in Tennessee after passing through Alabama; and the rest of that wood is transported to mills in Alabama and in Mississippi. Exh. "A," Aff. Brown, par. 11; Exh. "B," Depo. Minor, p. 76, l. 19 - p. 77, l. 5; p. 117, l. 10 - l. 23; Exh. "C," Aff. May, par. 3; Exh. "D," Aff. Gallaher, pars. 4 and 5; Exh. "E," Aff. Hensley, pars. 3 and 4; Exh. "F," Aff. Cutchins, pars. 3 and 4; Exh. "H," Aff. Anthony, pars. 3 and 4; Exh. "I," Aff. Cole, par. 4. Though the percentages vary from month-to-month and year-to-year, between October 4, 2016 and May 14, 2019, on average, approximately twenty-five percent (25%) of the wood harvested by CFP went to a mill in Alabama or Mississippi or went to a mill in Tennessee after passing through Alabama. Exh. "A," Aff. Brown, par. 11.

K.     At a mill, the wood is unloaded from the wood trailers by employees of that mill using equipment kept and operated by that mill. Exh. "A," Aff. Brown, par.

12. That wood is then processed in furtherance of commercial enterprises involved in making lumber and paper. Exh. "A," Aff. Brown, par. 12.

L.      From the time it is cut until it is unloaded at the mill, the wood remains owned by Threshhold. Exh. "A," Aff. Brown, par. 13. CFP is compensated by Threshold for harvesting, loading, and transporting the wood to the mills at which it will be processed.  Exh. "A," Aff. Brown, par. 13.

M.      The actual weight and the gross vehicle weight rating ("GVWR") of each pullout truck and of each road truck is greater than 10,001 pounds. Exh. "A," Aff. Brown, par. 15; Exh. "G," Aff. Ragan, par. 10.

N.      The actual weight and GVWR of each wood trailer exceeds 10,001 pounds. Exh. "A," Aff. Brown, par. 16; Exh. "G," Aff. Ragan, par. 10.

O.      The actual weight of each combination of a pullout truck or road truck and a wood trailer exceeds 10,001 pounds, and the gross combined vehicle weight rating ("GCVWR") of such combinations also exceeds 10,001 pounds. Exh. "A," Aff. Brown, par. 17; Exh. "G," Aff. Ragan, par. 10.

P.      Between October 4, 2016 and May 14, 2019, CFP normally kept five to six road trucks, three to four pull-out trucks, and eighteen wood trailers. Exh. "A," Aff. Brown, par. 18.

Q.      Between October 4, 2016 and May 14, 2019, CFP also bought gravel and

transported it on public highways from Tennessee into Alabama using a Mack dump truck owned by CFP which has an actual weight exceeding 10,001 pounds and a GVWR exceeding 10,001 pounds. Exh. "A," Aff. Brown, par. 19.  The buyers of the gravel paid CFP for the gravel and for transporting it from Tennessee to the buyers' locations in Alabama. Exh. "A," Aff. Brown, par. 19.

R.    Insofar as the transportation of the wood and gravel on public highways is concerned, CFP operates under the regulations and jurisdiction of the United States Department of Transportation. Exh. "A," Aff. Brown, par. 14.

S.    Between October 4, 2016 and May 14, 2019, Minor's work for CFP included (but was not limited to) work as a skilled mechanic inspecting, maintaining, and repairing the pullout trucks, road trucks, wood trailers, and Mack dump truck. Exh. "A," Aff. Brown, par. 21; Exh. "B," Depo. Minor, p. 244, l. 22 - p. 247, l. 9; Exh. "G," Aff. Ragan, pars 5 to 9.

T.    Safety-affecting work done by Minor (as a mechanic) on CFP's pullout trucks, road trucks, wood trailers, and the Mack dump truck includes, but is not limited to, removing, installing, repairing, and replacing wheels and tires; maintaining proper pressure in tires; and removing, installing, adjusting, repairing, and replacing brake drums, brake shoes, and other parts of the brake systems. Exh. "A," Aff. Brown, pars. 22 and 23; Exh. "B," Depo. Minor, p. 64, l. 21 - p. 72, ll. 17;

p. 81, l. 2 - l. 7; p. 88, l. 18 - p. 89, l. 6; p. 104, l. 5 - p. 105, l. 9; p. 115, l. 22 - p. 117, l. 9;  p. 119, l. 21 - p. 126, l. 15; p.  128, l. 3 - l. 21; p. 153, l. 7 - p. 154, l. 4; p. 156, l. 7 - l. 11; p. 157, l. 14 - l. 21;  p. 160, l. 6 - l. 12; p. 160, l. 23 - p. 161. l. 19; p. 163, l. 5 - l. 10; p. 168, l. 21 - p. 172, l. 4; p. 173, l. 21 - p. 174, l. 19; p. 178, l. 16 - p. 179, l. 18; p. 245, l. 9 - l. 16; p. 322, l. 9 - p. 323, l. 18; p. 344, l. 3 - l. 10; p. 345, l. 16 - p. 347, l. 14;  Exh. "C," Aff. May, pars. 6 and 7; Exh. "D," Aff. Gallaher, pars. 7 and 8; Exh. "E," Aff. Hensley, pars. 6 and 7; Exh. "F," Aff. Cutchins, pars. 7 and 8; Exh. "G,"  Aff. Ragan, pars. 7 and 8; Exh. "H," Aff. Anthony, pars. 7 and 8; Exh. "I," Aff. Cole, pars. 7 and 8.  Minor did the types of safety-affecting work described above on a consistent, regular, and frequent basis throughout the entire period between October 4, 2016 and May 14, 2019. *Id*; *Id*.; *Id*.; *Id*.; *Id*.; *Id*.; *Id*. at pars. 4 - 8; *Id*.; *Id*.

U.     Between October 4, 2016 and May 14, 2019, Minor would also occasionally work as a "loader" loading wood onto wood trailers, an activity that directly affects the safety of operation of those trailers and of the road trucks which pull those wood trailers on public highways. Exh. "A," Aff. Brown, pars. 6 and 24; Exh. "B," Depo. Minor, p. 49, l. 1 - l. 14; p. 50, l. 8 - l. 21; p. 86, l. 21 - p. 87, l. 3; p. 112, l. 20 - p. 114, l. 14; p. 164, l. 19 - p. 165, l. 12;  p. 245, l. 17 - p. 246, l. 13; p. 320, l. 18 - p. 321, l. 9; Exh. "C," Aff. May, par. 9; Exh. "F," Aff. Cutchins, par. 10; Exh. "H," Aff. Anthony, par. 10; Exh. "I," Aff. Cole, par. 10.

V.    Between October 4, 2016 and May 14, 2019, at least twenty-five percent (25%) of the time that Jeremy was working for CFP, he was performing work that directly affected the safety of operation of the pullout trucks, road trucks, and wood trailers, and of the dump truck used to haul gravel from Tennessee into Alabama, on public highways.[2] Exh. "A," Aff. Brown, par. 25; Exh. "C," Aff. May, pars. 6 and 7; Exh. "D," Aff. Gallaher, pars. 7 and 8; Exh. "E," Aff. Hensley, pars. 6 and 7; Exh. "F," Aff. Cutchins, pars. 7 and 8; Exh. "G," Aff. Ragan, pars. 3-5 and 7-8;  Exh. "H," Aff. Anthony, pars. 7 and 8; Exh. "I," Aff. Cole, pars. 7 and 8.

W.    Initially, Minor claimed he did not work as a driver, driver's helper, or

---

[2]Minor testified that if there was an issue in this case about the amount of time he spent doing work that affected the safety of the operation of the motor vehicles at issue, Jimmy May, Brett Gallaher, Trent Anthony, and other of the truck drivers whose trucks Minor serviced would be the persons with knowledge on that issue. Exh. "B," Depo. Minor, p. 73, l. 6 - p. 74, l. 19.  Those truck drivers include Jimmy May, Brett Gallaher, Trent Anthony, Chad Hensley, Michael Cutchins, and Michael Cole, all of whom have given affidavits. Exh. "C," Aff. May, pars. 3 and 8; Exh. "D," Aff. Gallaher, pars. 4 and 9; Exh. "E," Aff. Hensley, pars. 3 and 8; Exh. "F," Aff. Cutchins, pars. 3 and 9; Exh. "H," Aff. Anthony, pars. 3 and 9; Exh. "I," Aff. Cole, pars. 3 and 9.

loader with respect to small vehicles; however, later, Minor changed his story and claimed that he both drove and did mechanic work on small vehicles. Exh. "B," Depo. Minor, p. 330, l. 7 to p. 332, l. 3.

X.     None of the small vehicles Minor claimed to drive and to do mechanic work on were used to move passengers or property or to provide services across State lines for anyone other than the defendants. Exh. "A," Aff. Brown, pars. 26-28; Exh. "B," Depo. Minor, p. 84, l. 17 - p. 86, l. 8; p. 95, l. 16 - l. 21; p. 97, l. 18 - p. 99, l. 11; p. 107, l. 20 -p. 110 l. 22; p. 331, l. 1- l. 6; p. 341, l. 7 - l. 20.

## II.     THE APPLICABLE LAW.

### A.     SECTION 207 OF THE FAIR LABOR STANDARDS ACT.

29 U.S.C. §207(a)(1) requires employers to pay overtime compensation to covered employees who work more than 40 hours in a given week. *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2121 (2016).

As an FLSA plaintiff, Minor has the burden of proving he worked overtime without pay. *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1314-15 (11th Cir. 2007).

### B.     THE MOTOR CARRIER ACT EXEMPTION.

Congress exempted various categories of employees from the FLSA overtime requirements.  The Motor Carrier Exemption exempts "...any employee with respect to whom the Secretary of Transportation has power to establish qualifications and

8

maximum hours of service pursuant to the provisions of Section 31502 of Title 49," i.e., the Motor Carrier Act ("MCA"). 29 U.S.C. § 213(b)(1); *Bolar*, 2019 U.S. Dist. LEXIS 166783 at *18.

Section 31502 of the MCA authorizes the Secretary of Transportation (the "Secretary") to prescribe requirements for qualifications and maximum hours of service of employees of a motor carrier or a motor private carrier. 49 U.S.C. § 31502(b)(1)-(2). This provision applies to transportation described in 49 U.S.C. § 13501.   In turn, Section 13501 confers jurisdiction on the Secretary over transportation by a motor carrier on a public highway, to the extent passengers, property, or both are transported by motor carrier between a place in a State and a place in another State, or from one place in a State to another place in the same State through another State. 49 U.S.C. § 13501(1)(A)-(B).

The applicability of the Motor Carrier Exemption depends both on the class to which the employer belongs and on the class of work involved in the employee's job. Specifically, the employer's business must be subject to the Secretary's jurisdiction under the MCA, *Walters v. Am. Coach Lines of Miami, Inc*., 575 F.3d 1221, 1227 (11th Cir. 2009), *citing Baez v. Wells Fargo Armored Serv. Corp.,* 938 F.2d 180, 181-182 (11th Cir. 1991) (*per curiam*), and the employee's work activities must "directly affect the safety of operation of motor vehicles in the transportation on the

public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act."  29 C.F.R. § 782.2(a); *Walters*, 575 F.3d at 1227; *Baez*, 938 F.2d at 182.

An employer's business is subject to the Secretary's jurisdiction if the employer is a motor private carrier by motor vehicle engaged in interstate commerce. *Walters*, 575 F.3d at 1221; *Baker v. Supreme Bev. Co.*, 2014 U.S. Dist. LEXIS 172833, at *12-13 (N.D.Ala.).

Only certain classes of workers are considered to directly affect safety of operations of motor vehicles– these include drivers, driver's helpers, loaders, and mechanics. 29 C.F.R. § 782.2(b)(1), *citing Pyramid Motor Freight Corp. v. Ispass,* 330 U.S. 695, 708 (1947); *Lloyd v. Hi-Ridge Transp*., 396 F. Supp. 2d 1290, 1296 (M.D. Ala. 2005).

A mechanic to whom the Motor Carrier Exemption applies is an employee whose duties include keeping motor vehicles "in a good and safe working condition." 29 C.F.R. § 782.6(a); *In re Circle City Transp., Inc*., 2011 Bankr. LEXIS 4218, at *5-6 (M.D. Ala.). Work like keeping lights in good and safe working order and inspecting and checking air pressure in tires, changing tires, and repairing and rebuilding tires, have been held to directly affect safety of operation. *Id; Id.*

When determining whether an employee engages in activities of a character

directly affecting the safety of operation of motor vehicles in interstate commerce, the controlling factor is the character of the activities involved in the performance of the employee's job. 29 C.F.R. § 782.2(b)(2);  *Morris v. McComb*, 332 U.S. 422, 431-32 (1947);  *see Levinson v. Spector Motor Serv.*, 330 U.S. 649, 674-75 (1947).

As a general rule, if the bona fide duties of the job performed by the employee are in fact such that he is called upon in the ordinary course of his work to perform, either regularly or from time to time,[3] safety-affecting activities, he comes within the Exemption in all workweeks when he is employed at such job. Where this is the case, the rule applies regardless of the proportion of the employee's time or of his activities which is actually devoted to such safety-affecting work in the particular workweek, and the Exemption applies even in a workweek when the employee performs no work directly affecting "safety of operation." 29 C.F.R. § 782.2(b)(3); *Morris,* 332 U.S. at 431-32; *Pyramid*, 330 U.S. at 708; *Lloyd*, 396 F. Supp. 2d at 1297-98.

Prior to 2018, the Eleventh Circuit and many other courts narrowly construed the Motor Carrier Exemption.  That practice stopped in 2018, however, after the Supreme Court held that exemptions are to be "fairly" construed. *Encino Motorcars*, 138 S.Ct. at 1142.

---

[3]In *Morris*, 332 U.S. at 431, only about four percent (4%) of the employees' work was devoted to services in interstate commerce.

Last, the employer bears the burden of proving its entitlement to the Motor Carrier Exemption. *Walters*, 575 F.3d at 1226; *Abel v. Southern Shuttle Services, Inc.*, 631 F.3d 1210, 1212 (11th Cir. 2010).

### C.    THE SMALL VEHICLE EXCEPTION.

On August 10, 2005, Congress passed the "Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users," a/k/a "SAFETEA-LU."

On June 6, 2008, Congress passed the SAFETEA-LU Technical Corrections Act of 2008, a/k/a the "TCA." Pub. L. No. 110-244 § 306(a), 122 Stat. 1572, 1620 (2008). The TCA includes an exception that extends FLSA overtime protection to certain "covered employees," notwithstanding the Motor Carrier Exemption.  This exception is commonly referred to as the "Small Vehicle Exception."

Under §306(c) of the TCA, a "covered employee" is defined, in relevant part, as an individual employed by a DOT-regulated motor carrier whose work, as a driver, driver's helper, loader, or mechanic, in whole or in part, affects "the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce."

Courts have placed the burden of proving the elements of the Small Vehicle Exception on the plaintiff reasoning that it is the plaintiff's burden to demonstrate that he is entitled to recover overtime pay. *Carley v. Crest Pumping Techs., L.L.C.*,

12

890 F.3d 575, 580 (5th Cir. 2018); *Norman v. QES Wireline LLC*, 2019 U.S. Dist.

LEXIS 165504, *19 (S.D. Tex.); *Snively v. Peak Pressure Control, LLC,* 2018 U.S.

Dist. LEXIS 113033, *11 (W.D. Tex.); *see also Rychorcewicz v. Welltec, Inc.*, 2018

U.S. Dist. LEXIS 123512, *32 (S.D. Tex.)

## III.   THE MOTOR CARRIER ACT EXEMPTION APPLIES.

### A.   THE ELEMENTS REQUIRED TO ESTABLISH APPLICABILITY OF THE MOTOR CARRIER EXEMPTION.

To establish that the Motor Carrier Exemption applies, the defendants need

only show: (a) CFP is a carrier whose transportation of property by motor vehicle is

subject to the Secretary's jurisdiction; (b) Minor was a driver, driver's helper, loader,

or mechanic; and (c) Minor regularly or from time to time engaged in activities that

directly affected the safety of operation of motor vehicles in the transportation of

passengers or property in interstate commerce. *See* 29 C.F.R. §§ 782.2(a)-(b) (2);

*Mena v. McArthur Dairy,* 352 F. App'x 303, 305-306 (11th Cir. 2009); *Baez*, 938

F.2d at 182.

### B.   THE PROOF THAT THE MOTOR CARRIER ACT EXEMPTION APPLIES.

#### 1.   CFP Is A Motor Private Carrier.

CFP is a "motor private carrier"[4] because CFP provides motor vehicle[5]

---

[4] 49 USC §13102(15): "The term 'motor private carrier' means a person,

transportation,[6] including loading of wood onto wood trailers and transporting that wood with diesel-engine driven trucks pulling those trailers on public highways from points in Tennessee to points in Alabama and Mississippi and from points in Tennessee through Alabama and then to a mill in Tennessee, for compensation. *See* 49 USCS § 13102 (13) through (16) and 49 USC §5102 (13).

### 2.    Minor Was A Mechanic And At Times A Loader.

Minor's work for CFP included that of a skilled mechanic working on the road trucks and wood trailers used by CFP to transport the wood on public highways from

---

other than a motor carrier, transporting property by motor vehicle when— (A) the transportation is as provided in section 13501 of this title; (B) the person is the owner, lessee, or bailee of the property being transported; and (C) the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise."

[5]49 USC §13102(16): "The term 'motor vehicle' means a vehicle, machine, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway in transportation, or a combination determined by the Secretary...."

[6]49 USC §13102(23): "The term "transportation" includes— (A) a motor vehicle... or equipment of any kind related to the movement of ...property...; and (B) services related to that movement...."

harvesting sites in Tennessee to processing facilities in Alabama and Mississippi, and sometimes through Alabama and back into Tennessee. Minor's work for CFP also included loading wood onto the wood trailers.

### 3. Minor Regularly Engaged In Activities That Affected The Safety Of Operation of Motor Vehicles In The Transportation Of Property In Interstate Commerce.

In his capacity as a mechanic working for CFP, Minor regularly engaged in a wide variety of activities that affected the safety of operation of the trucks and trailers used by CFP to transport the wood in interstate commerce.  Minor's occasional activities as a loader, loading wood onto the wood trailers, also directly affected the safety of operation of those trucks and trailers in interstate commerce.

### 4. The Amount Of Minor's Work Affecting Safety Of Operation Of Motor Vehicles In The Transportation Of Property In Interstate Commerce Was More Than *De Minimis*.

It is undisputed that more than a *de minimis* amount of Minor's time was spent doing such safety-affecting work on the trucks and trailers CFP used to transport the wood and the gravel.

### C. CONCLUSION: DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE ISSUE OF WHETHER THE MOTOR CARRIER ACT EXEMPTION APPLIES.

With undisputed evidence, defendants have shown  that all of the requirements for application of the Motor Carrier Act Exemption have been met. 29 C.F.R. § 782.7;

*Berry v. Best Transp., Inc.*, 2018 U.S. Dist. LEXIS 216598, *10 (E.D. Mo.) ("Highway transportation by motor vehicle from one State to another, in the course of which the vehicles cross the State line, clearly constitutes interstate commerce and employees of a carrier so engaged, whose duties directly affect the safety of operation of such vehicles, are within the MCA exemption.")

## IV.   THE SMALL VEHICLE EXCEPTION TO THE MOTOR CARRIER ACT EXEMPTION DOES NOT APPLY.

### A.    THE ELEMENTS REQUIRED TO ESTABLISH APPLICABILITY OF THE SMALL VEHICLE EXCEPTION.

As relates to the Small Vehicle Exception, Minor's work would have been that of a driver and of a mechanic.  To qualify for overtime pay as a <u>mechanic</u>, Minor has the burden of proving: (1) he was a mechanic for a DOT-regulated motor carrier, (2) his work affected, in part, the safety of vehicles weighing 10,000 pounds or less, **and (3) the vehicles were in transportation or passengers or property in interstate commerce.** 49 USC §5102(1) and (13).

To qualify for overtime pay as a <u>driver</u>, Minor has the burden of proving: (1) he was a driver for a DOT-regulated motor carrier, and (2) his work included, in part, driving vehicles weighing 10,000 pounds or less **in transportation of passengers or property in interstate commerce.** 49 USC §5102(1) and (13).

Language in the two immediately preceding paragraphs was bolded to

emphasize the fact that to prevail on the Small Vehicle Exception, the employee's work in small vehicles must involve interstate transportation of passengers or property. Pub. L. No. 110-244, §306(c)(2)(B) (work must affect "...the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce."); 49 USC §5102(1) and (13) (defining "commerce" and "transportation"). *Scott v. K. W. Max Invs., Inc*., 256 F. App'x 244, 248 (11th Cir. 2007); *Thorne v. All Restoration Servs.*, 448 F.3d 1264, 1266 (11th Cir. 2006) (for an employee to be engaged in commerce under the FLSA, he must be directly participating in the actual movement of persons or things in interstate commerce....); *see also* 29 CFR §776.23(d)(2) (2005).

Case law makes clear that an employee's driving a small vehicle solely for the purpose of making repairs to vehicles or equipment of his employer does not involve transportation of passengers or property in interstate commerce.   One case on point is *Garcia v. W. Waste Servs., Inc.*, 969 F.Supp.2d 1252, 1257 (D. Idaho).   In *Garcia*, it was undisputed that Garcia's employer was a DOT-regulated motor carrier, 969 F.Supp.2d at 1261, and that the work done by Garcia– a mechanic whose work included repairing his employer's trash collection trucks and other heavy equipment, *id*. at 1254, 1260– included activities which affected the safety of his employer's trash collection trucks, which were operated in interstate commerce, and thus, that the

17

Motor Carrier Exemption applied. *Id.* at 1256-1257.  Garcia, however, asserted that he was nonetheless entitled to overtime under the Small Vehicle Exception. *Id.* at 1256-1257.  Garcia's testimony was that he frequently drove his own vehicle– which actually weighed 5,320 pounds and had a GVWR of 6,200 pounds– to do roadside repairs to his employer's service vehicles.  The Court concluded that this activity did not involve transportation in interstate commerce because Garcia was driving the small vehicle only for the purpose of working on his employer's trucks:

> However, Garcia cannot establish that his work as a driver involved transportation in interstate commerce.  The MCA requires an employee to actually transport property interstate or provide services to customers after crossing state lines in order to qualify as a driver for purposes of the exemption. 29 C.F.R. § 782.3. The TCA exception uses the same definition to determine who qualifies as a driver. Pub. L. No. 110-244, § 306(c)(1). Garcia has presented no evidence that he drove across state lines. Moreover, Garcia did not transport property as a driver of a service vehicle or provide services to customers. Garcia traveled solely to repair company vehicles. Even if Garcia drove across state lines to repair a vehicle, repairing a company vehicle would not qualify as interstate commerce. See Colbeck v. Dairyland Creamery Co., 70 S.D. 283, 291, 17 N.W.2d 262, 266 (1945) (holding that a refrigeration mechanic who crossed State lines in a truck in which he transported himself to and from the various places at which he serviced equipment belonging to his employer did not qualify as a driver under the MCA). Therefore, Garcia is not eligible for FLSA overtime pay as a small vehicle driver.

*Garcia*, 969 F. Supp.2d at 1261; *Colbeck v. Dairyland Creamery Co.*, 70 S.D. 283, 291 (S.D. 1945) (employee's driving of light truck to carry tools to work on

refrigeration units was "simply incidental to appellant's occupation...."); *Noll v. Flowers Foods, Inc.*, 2020 U.S. Dist. LEXIS 137565, *15-16 (D. Me.) (employees who drove themselves to customers' stores in small vehicles, but who did not transport employer's baked goods in small vehicles, were not entitled to overtime under TCA/Small Vehicle Exception); *compare Harrington v. Despatch Indus., L.P.*, 2005 U.S. Dist. LEXIS 12781, at *2-3, *13-14, *19 (D. Mass.) (employee who drove employer's van, carrying tools, test equipment, and repair parts, across state lines to provide services to employer's customers, was acting in interstate commerce).

### B.   THE SMALL VEHICLES MINOR CLAIMS TO HAVE DONE MECHANIC WORK ON AND TO HAVE DRIVEN WERE NOT INVOLVED IN TRANSPORTING PASSENGERS OR PROPERTY IN INTERSTATE COMMERCE.

There is no evidence that any small vehicle Minor claims to have driven and/or on which Minor claimed to have performed mechanic work was operated in the transportation of property or persons in interstate commerce. Instead, the undisputed evidence is to the contrary:

1.   Minor admitted that he never drove any small vehicle across state lines to transport passengers or property for anyone other than the defendants.

2.   When Minor drove the small vehicles, he did so only to carry himself or tools, parts, tires, etc. in furtherance of his work for the defendants.

3.     The small vehicles Minor performed mechanic work on were only used to transport property of and to provide services to Minor's employer, CFP.

**C.     CONCLUSION: DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE ISSUE OF WHETHER THE SMALL VEHICLE EXCEPTION APPLIES.**

A critical element required to be proved for a claim under the Small Vehicle Exception is that the small vehicle(s) be used in transportation of passengers or property in interstate commerce.

With undisputed evidence, including Minor's sworn testimony, defendants have shown that none of the small vehicles which Minor claims to have driven and/or upon which Minor claims to have performed mechanic work was involved in the transportation of passengers or property in interstate commerce.

**V.     CONCLUSION.**

In sum, defendants have shown, on undisputed evidence, that defendants are entitled to summary judgment in defendants' favor on all of the plaintiff's claims against the defendants as the Motor Carrier Exemption applies and the Small Vehicle Exception does not apply.

/s/  James Tassin
James Tassin
Bar Number: ASB-1608-A50J
Attorney for Defendants/
Counterclaim Plaintiffs

**OF COUNSEL:**
James Tassin, LLC
1015 Highway 72, East
Tuscumbia, AL    35674
(256) 383-0802 -   telephone
(256) 383-5057 -   facsimile
E-mail: james@jtassin.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 2nd day of November, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Anthony D. Michel
Jessica M. Wolinsky
505 20th Street North, Ste. 1650
Birmingham, AL 35203
anthony@wmalabamalaw.com
jessica@wmalabamalaw.com

/s/  James Tassin
OF COUNSEL